**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY W. BESTHOFF, JR. derivatively and on behalf of WORLD WATER WORKS HOLDINGS, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> PRASHANT MITTA, RAVI REDDY, RAVISHANKAR TUMULURI, and WORLD WATER WORKS HOLDINGS, INC., <br><br> *Defendants.* | Civil Action No. 17-1449 (JMV) (MF) <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter is a shareholder derivative action. Currently pending before the Court is Defendants Prashant Mitta, Ravi Reddy, Ravishankar Tumuluri, and World Water Works Holdings, Inc.'s motion to dismiss the Verified Shareholder Complaint filed by Plaintiff Anthony W. Besthoff, Jr. D.E. 10, 29. The Court reviewed all submissions regarding the motion and considered the motion without oral argument pursuant to L. Civ. R. 78.1(b).[1] For the reasons that follow, Defendants' motion is **DENIED.**

---

[1] The following were filed and considered in connection with the motion: (1) Defendants' Memorandum in Support of Motion to Dismiss Plaintiff's Verified Shareholder Complaint and Jury Demand, D.E. 10; (2) Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss and in Support of Plaintiff's Cross-Motion for Preliminary Injunctive Relief, D.E. 15; (3) Defendants' Memorandum in Further Support of Motion to Dismiss Plaintiff's Complaint and in Opposition to Plaintiff's Cross-Motion for Preliminary Relief, D.E. 19; (4) Plaintiff's Letter Brief in Further Support of the Cross-Motion for Preliminary Relief, D.E. 21; (5) Plaintiff's Supplemental Memorandum of Law in Further Support of Motion for Injunctive Relief, D.E. 28; (6) Defendants' Memorandum in Support of Supplemental Motion to Dismiss, D.E. 29; (7) Plaintiff's Letter Brief

## I. Factual Background & Procedural History

The following facts are taken from the Verified Shareholder Complaint. D.E. 1, ("Complaint" or "Compl."). Plaintiff is a shareholder of World Water Works Holdings, Inc. ("WWW"), a company that develops and makes "wastewater treatment solutions." Compl. at ¶¶ 9-10, 2. WWW is a Delaware corporation with a principal place of business in Oklahoma. *Id.* at ¶ 9. WWW is the owner of World Water Works, Inc. ("WWW Inc."), a New York corporation that is the operating arm of WWW. *Id.* at ¶¶ 9, 25.

Mitta, Reddy, and Tumuluri (collectively "Defendants") are members of the WWW board of directors. *Id.* at ¶¶ 11-13. Mitta is also the Chief Financial Officer ("CFO") of WWW. *Id.* at ¶ 11. Defendants became associated with WWW after making investments in the company. *Id.* at ¶¶ 31, 33. Mark Fosshage is the founder of WWW and also served as Chief Executive Officer ("CEO") and board member until his removal in November 2016. *Id.* at ¶ 26. James Fosshage, Mark's father, is a preferred shareholder of WWW and also a board member. *Id.* at ¶¶ 32, 35.

In 2012, Defendants formed WWW India PVT Ltd. to expand WWW's business in India and the Middle East. *Id.* at ¶ 37. In 2015, Defendants formed WWW Holdings India LLC, a "fully owned subsidiary of WWW," which in turn owns WWW India PVT Ltd. (collectively, the "India Operations"). *Id.* at ¶¶ 37-39. The Complaint refers to WWW Holdings India LLC and WWW India PVT Ltd. as the "India Operations."[2] *Id.* at ¶ 39. Mitta is the CEO of the India Operations.

---

in Opposition, D.E. 30; (8) Defendants' Memorandum in Opposition to Plaintiff's Second Cross-Motion for Preliminary Relief, D.E. 31; (9) Defendants' Reply Letter Brief, D.E. 32; (10) Plaintiff's Letter Reply to Defendants' Opposition, D.E. 33; (11) Defendants' Letter Brief for Leave to File Further Support of the Supplemental Motion to Dismiss, D.E. 41; (12) Plaintiff's Letter Brief in Opposition, D.E. 46; and (13) Defendants' Letter Brief in Reply, D.E. 47.

[2] Defendants' ownership of the India Operations is through three entities referred to in the Complaint as the "Think Companies." *Id.* at ¶¶ 33, 50, 60. In addition, Defendants' investments

*Id.* at ¶ 41. The Complaint alleges that the India Operations were a "drain" on WWW, and that WWW resources (totaling approximately $2,000,000) were "redirected" to the India Operations to the detriment of WWW. *Id.* at ¶¶ 42-43.

In July 2015, the India Operations were successfully "spun off" from WWW as separate entities owned by Defendants. *Id.* at ¶ 50. Plaintiff alleges that Defendants were improperly on "both sides" of the spin off, negotiating on behalf of WWW and the India Operations. *Id.* at ¶¶ 49-52. Plaintiff adds that WWW had no "independent counsel, valuations, or projections[.]" *Id.* As part of the spin-off transition, the India Operations were granted a license to use WWW intellectual property in "India and other designated territories," but could not use any "new technologies developed by [WWW]" after the license had been signed. *Id.* at ¶¶ 54-55.

The spin-off transaction was accomplished through the following documents: a Membership Interest Purchase Agreement ("MIPA"), a License Agreement, a Intercompany Services Agreement ("ISA"), and a Side Letter. *Id.* at ¶¶ 51, 54, 58, 64. Mitta signed the License Agreement and the ISA for the India Operations. *Id.* at ¶ 59. Pursuant to the MIPA, Defendants agreed to purchase the India Operation for a total of $910,000, which was comprised of $120,000 cash and a $790,000 promissory note. *Id.* at ¶ 60. The Side Letter granted the India Operations the option to require WWW to repurchase a 25% interest in the India Operations. *Id.* at ¶ 64. The Side Letter also provided the India Operations the option to expand its territory, to all of Asia and Africa, under the License Agreement. *Id.* at ¶ 66.

In January 2016, Mitta notified Mark Fosshage that Defendants intended to exercise the option to have WWW repurchase a 25% interest in the India Operations. *Id.* at ¶ 67. In December

---

in WWW were made through either the Think Companies or Mitta Water Holdings, LLC. *Id.* at ¶¶ 31, 34.

2016, Reddy demanded that WWW finalize the repurchase. *Id.* at ¶ 69. Defendants also proposed that the promissory note for the purchase of the India Operations be reduced from $790,000 to $540,000 to account for WWW's 25% share of capitalization costs for the India Operations. *Id.* at ¶¶ 70-71. The India Operations have never paid the $790,000 or the reduced amount, $540,000. *Id.* at ¶ 72. Plaintiff contends that WWW lacks an "unconflicted, non-biased" majority of its board to properly respond to Reddy's December 2016 demand. *Id.* at ¶ 73.

The Complaint also accuses Defendants of engaging in self-dealing and misuse of WWW's resources, including: (1) Mitta's use of WWW's credit card and expense account for India Operations expenses, (2) Defendants' use of WWW's assets ($13,000) for legal fees as to personal matters, (3) directions to a WWW vice president to travel to India to close deals for the India Operations; (4) violations the License Agreement by improper expansion of the covered territory; (5) use of WWW computer systems for the India Operations; (6) failure to demand audited financial statements from the India Operations for review by WWW; and (7) failure to demand payment of the $790,000 (or the lesser $540,000) from the India Operations. *Id.* at ¶¶ 74-96.

In 2015, WWW won a bid for the "exclusive global rights to market and sell" technology developed by the "water and sewage authority [of] one of the world's largest advanced municipal wastewater treatment providers." *Id.* at ¶¶ 3. The Complaint refers to the water sewage authority as the "Authority[.]" The Complaint alleges impropriety as to the WWW's "exclusive global rights" marketing rights. *Id.* at ¶¶ 97-99. Plaintiff contends that Mitta, in breach of his fiduciary duty to WWW, negotiated directly with the Authority so that the India Operations could gain rights to the technology in violation of WWW's exclusive rights. *Id.* at ¶ 101. Plaintiff adds that Mitta has wrongfully interfered with WWW's efforts to negotiate additional licensing rights with the Authority. *Id.* at ¶¶ 102-103.

On November 15, 2016, Plaintiff sent a demand letter to WWW's board of directors setting forth the foregoing allegations of self-dealing and fiduciary breaches by Defendants. *Id.* at ¶ 105, Ex. A. The board did not provide a response to the demand letter within thirty days, passed a resolution denouncing the allegations in the demand letter, and appointed independent counsel to investigate the claims made in the demand letter. *Id.* at ¶¶ 107-109. As a of the filing of the Complaint, the board had not taken any further action in response to the demand letter. *Id.* at ¶ 109.

Plaintiff filed his Complaint on March 2, 2017. D.E. 1. The Complaint alleges the following: Count One – breach of fiduciary duty, Count Two – waste of corporate assets, Count Three – unjust enrichment (against Mitta only), and Count Four – tortious interference with contract (against Mitta only). *Id.* at ¶¶ 112-130. Defendants' motion to dismiss followed, D.E. 10, with Defendants arguing that a subsequent investigation and report by an outside law firm revealed that Plaintiff's claims were moot, incorrect, or did not warrant litigation. Defendants argued, alternately, that New York is the proper forum for the action. D.E. 10-1 at 14-17. Plaintiff filed an Opposition and also cross-moved for a preliminary injunction. D.E. 15. The Court heard argument as to the preliminary injunction and denied the motion on May 19, 2017, D.E. 27, and also denied Plaintiff's "supplemental cross-motion for injunctive relief" on June 28, 2017, D.E. 35. In addition, and with the Court's permission, D.E. 27, Defendants also moved to dismiss the Complaint for a separate reason, arguing that James Fosshage, not Plaintiff, was the real party in interest. D.E. 29.

## II. Legal Standard

### a. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for "lack of subject-matter jurisdiction." Plaintiff invokes the Court's diversity jurisdiction. Compl. at ¶ 21. To establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties" as well as an amount in controversy exceeding the statutory threshold. *Schneller ex rel Schneller v. Crozer Chester Med. Ctr.*, 387 Fed. App'x 289, 292 (3d Cir. 2010). Regardless of whether the issue is raised by the parties, the "Court has the ability and obligation to address concerns of subject matter jurisdiction *sua sponte*." *Doughtery, Clifford & Wadsworth Corp. v. Magna Grp. Inc.*, 2007 WL 2300719, at *1 (D.N.J. Aug. 6, 2007). Importantly, "[o]ne of the most basic principles of our jurisprudence is that subject-matter jurisdiction cannot be conferred upon a court by consent of the parties." *Gosa v. Mayden*, 413 U.S. 665, 707 (1973). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### b. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability

requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III. Analysis

As noted, Defendants provide three separate reasons for dismissal: (1) Plaintiff is not the real party in interest; (2) the Complaint was improperly filed in the District of New Jersey; and (3) the subsequent outside law firm report reveals that Plaintiff's claims lack merit. The Court addresses each in turn.

### A. Real Party in Interest

Relying on Federal Rule of Civil Procedure 19, Defendants argue that this matter should be dismissed because James Fosshage, rather than Plaintiff, is the real party in interest. D.E. 29-1. Defendants continue that if Fosshage, a New Jersey resident, was a party, he would destroy the diversity jurisdiction of the Court. *Id.* at 1. In support, Defendants note, among other things, that

Plaintiff relied on Fosshage's affidavit in support of Plaintiff's cross-motion for summary judgment. *Id.* at 3. More recently, Defendants added that Fosshage has admitted that he is funding Plaintiff's litigation. D.E. 41. As to the recent submission, Defendants curiously fail to include any legal authority in support of their position. Plaintiff argues, among other things, that he is the appropriate party pursuant to Rule 23.1 of the Federal Rules of Civil Procedure. D.E. 46.

This shareholder derivative action was brought pursuant to Federal Rule of Civil Procedure 23.1. Compl. at 1. Subsection (a) of Rule 23.1, which applies to derivative actions, provides in part that "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a). Moreover, pursuant to subsection (b)(2), the verified complaint must "allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack[.]" *Id.* at (b)(2). Thus, the Rule 23.1 expressly contemplates the potential for collusion for jurisdictional purposes in bringing a derivative suit. Defendants fail to cite to the rule, much less analyze it, in support of their motion.[3]

While a shareholder brings a derivative suit, the suit is actually on behalf of and for the benefit of the corporation. *Ross v. Bernhard*, 396 U.S. 531, 538-39 (1970) (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947)). In other words, the corporation "is the real party in interest" while a shareholder plaintiff is "at best the nominal plaintiff." *Id.* at 538. The corporation receives any recovery from the suit. *Id; see also Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 95 (1991) ("[T]he purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the

---

[3] To be clear, Defendants do cite to the rule in analyzing the outside law firm's investigation and report. D.E. 10-1 at 17. However, they do not do so as to their real party in interest argument.

misfeasance and malfeasance of 'faithless directors and managers.'") (quoting *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548 (1949)). Thus, WWW is the real party in interest in this matter.

In *Amar v. Garnier Enterprises, Inc.,* 41 F.R.D. 211, 215-17 (C.D. Cal. 1966), the court found that the plaintiff had violated Rule 23.1 by engaging in collusion for purposes of conferring diversity jurisdiction on the court. Among other things, the court in *Amar* noted that a shareholder transferred shares to the plaintiff because the shareholder desired "to find a new shareholder who could pursue the litigation" and that the shareholder transferred the minimum number of shares necessary to meet the jurisdictional requirements. *Id.* at 215-16. In addition, the court noted, the plaintiff did not see the written assignment of his shares until his deposition even though the transaction purportedly took place months before. *Id.* In other words, the plaintiff was not a prior shareholder and was only assigned shares for the purposes of bringing the action.

In contrast, "the fact that a party plaintiff has been solicited to bring suit and also has been indemnified against liability for costs and fees is not enough to make a case collusive so as to deprive a federal court of jurisdiction." *Allstate Ins. Co. v. Lumbermens Mut. Cas. Co.,* 204 F. Supp. 83, 86 (D. Conn. 1962) (citations omitted). In fact, in a relatively recent decision, a federal court has ruled that the collusion necessary under Rule 23.1 occurs "when a party who wishes to sue, but would be unable to bring a diversity action, recruits someone living in another jurisdiction *to become a shareholder* for the purpose of initiating a derivative suit with diversity jurisdiction." *Enterprises Intern., Inc. v. Pasaban, S.A.,* 2012 WL 2576359, *8 (W.D. Wash. July 3, 2012) (emphasis added) (citing *Walden v. Elrod,* 72 F.R.D. 5, 13 (W.D. Okla.1976)).

The Court denies Defendants' motion as to James Fosshage being the real party in interest. It appears that Defendants should have moved pursuant to Rule 23.1 rather than Rule 19. D.E. 29-1 at 4. Defendants have also not shown that Plaintiff was recruited to become a shareholder of

WWW for the purposes of initiating the current suit. Instead, Plaintiff was already a shareholder long before the filing of the current matter.

**B. Forum Selection Clause**

Defendants next argue that this matter should be dismissed because of a forum selection clause in the Amended and Restated Voting Agreement of World Water Works Holdings, Inc. (the "Agreement"). D.E. 10-1 at 15; 10-3 at 14-15. Plaintiff responds that his claims are not covered by the Agreement. D.E. 15-1 at 8-9. Plaintiff, however, refers to an "Investor's Rights Agreement," which appears to be different than the Agreement cited by Defendants. *Id.* at 5. Defendants argue that Plaintiff cited to the wrong agreement. Yet, Defendants also rely on Mitta's affidavit, and he refers to the document as the "Investor Voting Agreement," D.E. 10-2 at 1, although the Agreement is instead attached to the affidavit. D.E. 10-3 at 2.

Plaintiff signed the Agreement, which is dated November 30, 2012. D.E. 10-3 at 5, 17. The Agreement refers to different series of WWW's preferred stock. *Id.* at 5. Section 1 of the Agreement is entitled "Voting Provisions Regarding Board of Directors" and reviews, among other things, the size of the WWW's board, the board's composition, and the removal of board members. *Id.* at 5-7. Section 2 addresses votes to increase the common stock of WWW, Section 3 concerns the sale of WWW, Section 4 discusses remedies, and Section 5 refers to the term of the Agreement. *Id.* at 8-11.

Section 6, entitled "Miscellaneous," contains a provision that Delaware law governs the Agreement. *Id.* at 12. Section 6.11 indicates that the Agreement along with the "Restated Certificate constitute the full and entire understanding and agreement between the parties with respect to the subject matter hereof[.]" *Id.* at 13-14. Section 6.16, captioned "Dispute Resolution," provides in pertinent part as follows:

The parties hereby irrevocably and unconditionally submit to the jurisdiction of the federal and state courts located within the geographical boundaries of the United States District Court for the Southern District of New York for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement, (b) agree not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the federal and state courts located within the geographical boundaries of the United States District Court for the Southern District of New York [.].

*Id.* at 14-15.

At the outset, the Court notes that Defendants do not make a motion to transfer this case, pursuant to 28 U.S.C. § 1404, to the Southern District of New York. Instead, they move to dismiss this matter pursuant to Rule 12(b)(6) "in accordance with the forum selection clause" in the Agreement. D.E. 10-1 at 15. Although not expressly indicated, the Court construes this as a motion to dismiss for *forum non conveniens*.

In *Atlantic Marine Construction Co. v. United States District Court*, the United States Supreme Court expressly indicated that it was not determining whether Rule 12(b)(6) was an appropriate vehicle for a motion to dismiss pursuant to *forum non conveniens*. 571 U.S. 49, 61 (2013). The Court, in fact, indicated that if a defendant used Rule 12(b)(6) in such circumstances, it would be "sensible" for the defendant to also move to dismiss based on *forum non conveniens*. *Id.* at 61 n. 4. However, in a recent nonprecedential opinion, the Third Circuit indicated that Rule 12(b)(6) could be used to dismiss a case for *forum non conveniens*. *Podesta v. Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017) (finding that while a party could move "under 28 U.S.C. § 1404(a) to transfer a case to another federal court based on a valid forum selection clause, a Rule 12(b)(6) dismissal is also an acceptable means of enforcing such a clause when, as here, the clause allows for suit in either a state or federal forum") (citing *Atlantic Marine*, 571 U.S. at 61; *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001)); *see also Breslow v. Klein*, 2018 WL

3031854, at 6 (D.N.J. June 19, 2018). Moreover, the Third Circuit in *Podesta* also instructed that a court should focus on a motion's function, not its caption. *Podesta*, 684 F. App'x at 216 (citing *Turner v. Evers*, 726 F.2d 112, 114 (3d Cir. 1984)). Here, the function of Defendants' motion is clearly a dismissal based on *forum non conveniens*. In addition, Plaintiffs have not challenged Defendants' use of Rule 12(b)(6). Accordingly, the Court will decide the motion pursuant to Rule 12(b)(6). However, the Court alternately views the motion as one to dismiss pursuant to the *forum non conveniens* doctrine, without reference to Rule 12(b)(6).

The Court must next determine whether the Complaint's claims fall within the purview of the Agreement's forum selection clause. As a threshold matter, the Court must decide which state's substantive law applies. Defendants indicate that law of New Jersey applies, D.E. 10-1 at 20, and Plaintiff does not address the issue. The Court, however, finds that Delaware law is appropriate.

In *Collins v. Mary Kay, Inc.*, the Third Circuit addressed choice of law provisions and forum selection clauses. 874 F.3d 176 (3d Cir. 2017). The defendant was a Texas-based cosmetic company. *Id.* at 179. Plaintiff was a New Jersey resident who had worked for the defendant in various capacities in New Jersey. *Id.* at 179. The parties had entered into two written agreements. *Id.* Each contained a choice of law provision specifying that Texas law would apply to a relevant dispute. *Id.* Further, each agreement contained a forum selection clause specifying that a Texas state court would have jurisdiction and venue over any such dispute. *Id.* After the parties' business relationship soured, the plaintiff filed a putative class action in the United States District Court for the District of New Jersey. *Id.* The defendant moved to dismiss the plaintiff's complaint pursuant to both Rule 12(b)(6) and *forum non conveniens*. *Id.* at 180. The district court granted defendant's

motion on *forum non conveniens* grounds, finding that Texas was the appropriate forum under the forum selection clauses. *Id.*

On appeal, the Third Circuit addressed the scope of the forum selection clauses. The Circuit affirmed that "a court considering the interpretation of a forum selection clause applies principles of contract law to determine the scope of the clause." *Id.* (citing *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997)). However, before applying contract law and determining the scope of the forum selection clauses, the *Collins* court stated that it had to determine the appropriate law to apply. *Id.* at 181. The Circuit applied the *Erie* doctrine, whereby a federal court sitting in diversity jurisdiction applies state law to substantive issues and federal law to procedural issues. *Id.* (citing *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938)). Applying *Erie*, the Third Circuit observed that issues concerning *enforcement* of forum selection clauses were subject to federal law. *Id.* The court in *Collins*, by comparison, ruled that issues concerning *interpretation* of such clauses were subject to state law because the analysis called for contract interpretation, a substantive matter. *Id.* at 182. The Circuit added that state law applied unless the questions of contract law fell within "certain restricted areas," including when "uniquely federal interests" are at stake. *Id.* at 182 (internal quotations omitted).

After determining that state contract law governed their interpretation of the forum selection clauses, the Third Circuit next decided which state's contract law to apply. *Id.* at 183. The Circuit affirmed that in a diversity case, a court looks "to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause." *Id.* Therefore, the *Collins* court applied New Jersey choice-of-law rules even though the underlying agreements indicated that Texas law controlled. *Id.*

13

The Circuit observed that under New Jersey law, "'when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.'" *Id.* at 183-84 (quoting *Instructional Sys., Inc. v. Comp. Curriculum Corp.*, 130 N.J. 324, 341 (1992)). However, the court in *Collins* noted that New Jersey will not uphold a choice-of-law clause when either of the following two exceptions are present:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Collins*, 874 F.3d at 184 (quoting *Instructional Sys.*, 130 N.J. at 342 (quoting Restatement (Second) of Conflicts of Laws § 187 (Am. Law Inst. 1969))). In light of New Jersey's standard, the Third Circuit found that Texas law applied. *Id.*

In light of the guidance in *Collins*, the Court applies New Jersey choice-of-law rules. Following the New Jersey standard, the parties' contractual choice of law applies, unless one of the two noted exceptions is present. The parties do not assert any such exception applies, and the Court finds that the exceptions are inapplicable. Further, WWW is a Delaware company. The Agreement provides that Delaware law governs, so the Court will apply Delaware law in interpreting the Agreement's forum selection clause.

Having determined that Delaware law applies, the Court turns to the critical issue of the impact of the Agreement's forum selection clause. Delaware law supports interpreting multiple contracts together if the contracts cross-reference one another. *Duff v. Innovative Discovery LLC*, 2012 WL 6096586, at *12 (Del. Ch. Dec. 7, 2012) ("Delaware law holds that where a contract incorporates another contract by reference, the two contracts will be read together as a single

contract."); *Brastor Mercantile, Ltd.*, 1989 WL 70971, at \*4 ("Utilization of the doctrine of incorporation by reference will avoid a tortured reading of these documents and will, in this Court's opinion, avoid frustrating the parties' intent."). Here, the Agreement expressly indicates that the entire agreement also includes the Revised Certificate of Incorporation. Defendants, however, fail to analyze the Revised Certificate and how it effects their argument. Without this necessary information, the Court cannot properly review Defendants' argument. As a result, the Court finds that Defendants' motion is insufficient.

Moreover, the critical question is whether the Complaint arises "out of or [is] based upon" the Agreement. The Complaint does not cite, nor does it allege a violation of, the Agreement. Instead, the Complaint claims that Defendants engaged in self-dealing and breached their fiduciary duties to WWW. The Agreement, among other things, refers to the composition of WWW's board, designation of board members, and the removal of board members. But the Agreement does not address self-dealing or breaches of fiduciary duty nor does it indicate how to resolve such issues. To this end, Defendants' substantive analysis of the Agreement's forum selection clause vis-à-vis the Complaint is noticeably lacking. D.E. 10-1 at 15-17; D.E. 19 at 10-12. Indeed, Defendants essentially refer to the Agreement and then assert in conclusory fashion that the Agreement "encompasses both Plaintiff's contract and tort claims." D.E. 10-1 at 15 n.4; *see also* D.E. 19 at 6. Defendants, as the moving party, have fallen well short of their obligation to demonstrate that the forum selection clause applies to the counts in the Complaint. For this additional reason, Defendant's motion is denied.

Finally, the Court notes that even if the forum selection clause applied to the Complaint, Defendants also completely fail to address *Atlantic Marine* (or its progeny) in either their moving brief or initial reply papers. D.E. 10, D.E. 19. The Supreme Court's decision in *Atlantic Marine*

changed the analytical framework for a *forum non conveniens* motion when a valid forum selection clause is involved. 571 U.S. at 59-67. Defendants should have also included an appropriate analysis under *Atlantic Marine* and related cases in support of their motion.

### C. The Outside Law Firm's Report

Defendants finally move to dismiss the Complaint because the "[b]oard's [d]ecision [n]ot to [p]roceed with [l]itigation [c]onstitutes a [v]alid [e]xercise of its [b]usiness [j]udgment[.]" D.E. 10-1 at 21. The Complaint indicates that on November 15, 2016, Plaintiff sent a demand letter to WWW's board of directors. Compl. at ¶ 105, Ex. A. The board did not provide a response to the demand letter within thirty days but did appoint independent counsel to investigate the claims made in the demand letter. *Id.* at ¶¶ 107-109. As of the filing of the Complaint, the board had not taken any further action in response to the demand letter, *id.* at ¶ 109, and Plaintiff contended that any additional demand would be futile, *id.* at ¶ 8. However, on March 10, 2017, Dilworth Paxson submitted a report (the "Dilworth Report") to WWW concerning the allegations in Plaintiff's demand letter. D.E. 10-2 at 2; D.E. 10-3 at 35.

The Dilworth Report indicates that the law firm was hired by WWW's board as "independent counsel" to investigate and evaluate Plaintiff's allegations. D.E. 10 at 35. The Dilworth Report concludes that the allegations were either moot,[4] incorrect, not supported by sufficient evidence, or were not in the best interests of WWW to pursue. D.E. 10-3 at 47, 49-51, 53. In light of the Dilworth Report, counsel for Mitta and Reddy demanded that the Complaint be dismissed. D.E. 10-2 at 3; D.E. 10-3 at 55. Defendants now assert that the WWW board's decision not to go forward with the current litigation is a valid exercise of its business judgment. D.E. 10-1 at 22.

---

[4] Defendants never moved to dismiss any portion of the Complaint on mootness grounds.

The United States Supreme Court has ruled that the demand doctrine is a matter of substance rather than procedure. *Kamen*, 500 U.S. at 96-97 (citations omitted). Moreover, the Supreme Court has observed that corporation law is a matter of state law. *Id.* at 98-99 (citations omitted). As a result, pursuant to the *Erie* doctrine, *Erie Railroad*, 304 U.S. at 78, the Court looks to the law of Delaware in deciding the issue.

Defendants argue that the Court can consider the Dilworth Report in the current motion to dismiss because the report is "integral to the Complaint and must not be ignored for purposes of this motion." D.E. 10-1 at 14. Defendants add that consideration of the report does not convert its motion to dismiss to one for summary judgment. *Id.* at 14. In resolving a motion to dismiss, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, the Dilworth Report is not referenced in the Complaint and was not in existence at the time Plaintiff filed, as Defendants' admit. D.E. 10-1 at 18 n. 14. Yet, whether the Court reviewed the report in the context of a motion to dismiss or for summary judgment, the outcome would not change.

Defendants' argument suffers from a fatal flaw: no action has been taken by independent members of WWW's board. The Supreme Court of Delaware has on numerous occasions delved into the area of shareholder derivative actions. *See, e.g., Speigel v. Buntrock*, 571 A.2d 767 (Del. 1990); *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726 (Del. 1988); *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984)[5]; *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981). However, the

---

[5] The standard of review applied by the *Aronson* court was subsequently changed in *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

Delaware Supreme Court has never waivered on the fact that self-interested board members cannot cause a derivative suite to be dismissed. *See Aronson*, 473 A.2d at 812 ("[P]rotections [of the business judgment rule] can only be claimed by disinterested directors whose conduct otherwise meets the tests of business judgment."); *Zapata Corp.*, 430 A.2d at 783 ("Board members, owing a well-established fiduciary duty to the corporation, will not be allowed to cause a derivative suit to be dismissed when it would be a breach of their fiduciary duty"). Instead, conflicted board members may delegate review to independent board members. *Aronson*, 473 A.2d at 813 ("[A] board has the power to appoint a committee of one or more independent disinterested directors to determine whether the derivative action should be pursued or dismissal sought."). If the conflicted board members delegate the authority to disinterested directors, the court's inquiry becomes one of "independence, good faith, and reasonable investigation." *Zapata Corp.*, 430 A.2d at 787. *See also Spiegel*, 571 A.2d at 777. Moreover, the independent directors may rely on experts, but the directors may not abdicate their duties to those outside professionals. *Aronson*, 473 A.2d at 816 (While directors may . . . reasonabl[y] rel[y] upon the expertise of . . . other qualified persons, the end result, nonetheless, must be that each director has brought his or her own informed business judgment to bear with specificity upon the corporate merits of the issues without regard for or succumbing to influences which convert an otherwise valid business decision into a faithless act.").

According to the Complaint, when the action was filed, WWW's board consisted of four members: James Fosshage and Defendants. The Complaint states with particularity Defendants' alleged conflicts and self-dealing. However, Defendants have submitted no evidence from independent, disinterested directors[6] indicating that the Complaint should be dismissed. Instead,

---

[6] In fact, Defendants have not even shown that the WWW board took any official action in response to the Dilworth Report. Instead, Defendants indicate that counsel for Mitta and Reddy demanded that the Complaint be dismissed. D.E. 10-2 at 3; D.E. 10-3 at 55.

Defendants indicate that the WWW board hired independent outside counsel to review the allegations in Plaintiff's demand letter. Yet, as noted above, while a disinterested director may reasonably rely on independent counsel, outside counsel cannot usurp the ultimate role of the independent director. Because Defendants have failed to show that their motion to dismiss is premised on the decision of directors with the necessary independence, good faith, and reasonable diligence, their motion to dismiss on this ground is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied. An appropriate Order accompanies this Opinion.

Dated: July 16, 2018

John Michael Vazquez, U.S.D.J.